Territory of Oklahoma *ex rel.* Homsher *et al.* v. Whitehall *et al.*

the east forty-three thousand acres of the East Otoe Pasture; the execution and completion of which leases we॒ ॒ then and there pending before him in his official capaci॒y aforesaid."

We think the description of the leases described in the indictment in the case at bar is much 'more full and complete than those referred to in the authorities cited, and we think the indictment describes the leases with sufficient certainty to apprise the defendant of the offense with which he is charged.

Hence, we think that the action of the court in overruling the motion to set aside the indictment and in overruling the motion for a new trial, and the pronouncing of sentence on the verdict of the jury was sustained by the law and the evidence.

For these reasons the action of the lower court is affirmed.

Burwell, J., who presided in the court below, not sitting; Hainer, J., having taken some part in this case in the district court, not sitting; all the other Justices concurring.

---

TERRITORY OF OKLAHOMA *ex rel.* C. L. HOMSHER, SAMUEL SILBIGER AND C. M. CRESSE v. J. C. WHITEHALL, H. C. LAW, F. E. ALLEN AND W. L. TUCKER, *Trustees of the Town of Bridgeport.*

(Filed January 13, 1904.)

1. BONDS—Who May Issue. A. municipal corporation having a population of not less than one thousand persons is authorized by act of congress of March 4, 1898, to call an election to issue bonds for the purpose of constructing a system of water works.

2. STATUTES—Construed—Census. The provision of the act of congress of March 4, 1898, requiring a school census to be taken to

determine the population of a town before proceeding to call an election to issue water works bonds, where the school district of which the town is composed has outside adjacent territory within its limits, is substantially complied with when a census has been taken of the entire district, and an assessor's. census has been taken of the town, which shows a bona fide population of twelve hundred and eighty-nine.

3. INJUNCTION—Waiver of Allegation. In. an action to enjoin the officers of a municipal corporation from issuing bonds to construct a system of water works where the petition contains an allegation that there were nine illegal votes cast which would change the re-'sult of the election, the burden is upon the plaintiff to establish such allegation of the petition; and, where the record does not disclose any attempt to prove such allegation, and the record does disclose a stipulation which indicates that such allegation was not contended for, the question will be held by this court to have been waived.

(Syllabus by the Court.)

*Error from the District Court of Caddo County; before F. E. Gillette, Trial Judge.*

*W. I. Matheny, County Attorney,* and *Samuel Silbiger,* for plaintiffs in error.

*C. F. Dyer,* for defendants in error.

Opinion of the court by

PANCOAST, J.:     This was an action brought in the district court of Caddo county by the plaintiff in error against the defendants in error, who were trustees of the town of Bridgeport, to enjoin the defendant from issuing twenty-two thousand dollars of water works bonds, which had been authorized by an election held in the city on the 14th day of January, 1903.     On presentation of the petition the judge of the district court, at chambers, granted a temporary injunction in the cause, after which, upon notice, a hearing was had, and the temporary injunction dissolved, from which last named order the appeal is taken.

There are but three propositions raised by the petition that need be noticed here. Some other minor questions are contended for, but so far as they are of importance, they are contained in the two main contentions.

First. It is contended that the issuing of twenty-two thousand dollars of water works bonds would create a debt in excess of 4 per cent. of the assessed valuation of the taxable property in said city, and would, therefore, be a violation of chapter 5 of the session laws of 1897 of the territory.

Second. That the city of Bridgeport is in school district No. 3, of Caddo county, and is not a separate district within itself, but includes territory extending two miles beyond the corporate limits; that there had never been any official school census of the city of Bridgeport separate and apart from the other territory; that the only census taken was the census of the entire district, and that the enumeration, if taken, would show less than one thousand population, and not more than eight hundred. Therefore, it is contended the city of Bridgeport does not come within the provisions of the act of congress of March 4, 1898, and that under that act no election can be held or bonds issued until a school census has been taken showing that the city has a population of not less than one thousand persons. Before noticing these two propositions, we will refer to the third.

There is an allegation in the petition that there were nine illegal votes cast, which would change the result of the election, and in the brief of the plaintiff in error it is argued that the court erred in refusing to hear evidence on this question, and making a finding thereon. The defendants, however, in their brief, call this court's attention to the fact that the

plaintiff in error, at the hearing of the motion to dissolve, agreed to relinquish all questions raised by the pleadings, other than the fact that the issuing of the bonds exceeded the four per cent. limit; that it was agreed that the plaintiff would rest its case solely upon that one proposition, and upon the construction of the act of congress of March 4, 1898.    While there is an agreed statement of facts in the record, this stipulation is not specifically set out, but the statement of the counsel for the defendants in their brief is not called in question by the plaintiff in error, and the findings of the trial judge indicate very strongly that the two propositions stated herein were the only ones submitted to him, and certainly they were the only two passed upon.    Nowhere does it appear in the record that the plaintiff in error in any way requested the judge to pass upon the question of illegal votes alleged to have been cast, nor does it appear that any evidence was offered bearing upon this question.    The burden was upon the plaintiff to make a *prima facie* showing in this matter.

A casual reading of chapter 5 of the session laws of 1897 will show that it only has reference to the funding of outstanding warrant indebtedness into bonds, and has no reference whatever to the issuing of bonds for the construction of water works.    It simply empowers a municipality to fund its outstanding legal warrant indebtedness, in the order of their registration, and to issue bonds in a sum not exceeding such indebtedness, and in no such case to issue bonds in excess of four per cent. of the assessed valuation according to the last preceding assessment of the municipality issuing the same.    If the act of congress of March 4, 1898, was not in existence, we cannot see where this act of the

legislature of 1897 could be made to apply to the matter under consideration here. This act in no way authorizes an election or the issuing of bonds for the purpose of building water works, and by no construction can it be held to cover a question of that kind. There are other statutes bearing upon that subject, but this one does not even refer to water works bonds, or the manner or method under which they may be issued, and we cannot see by what stretch of imagination this act can be held to have any bearing upon the question involved in this case.

The bonds voted by the city of Bridgeport, and about to be issued, were authorized, if at all, by the act of congress of March 4, 1898, and from the record in this case it would seem that the parties were acquainted with this act, and all the details of the act were attempted to be complied with. Prior to the passage of this act, and by the act of congress of 1886, municipalities were prohibited from creating an indebtedness in excess of four per cent. of their assessed valuation. This law has been considered by this court in several cases, but it is unnecessary to refer to these decisions here. By this new act of 1898 the old act was amended so as to permit and authorize municipal corporations upon conditions therein named, having a *bona fide* population of not less than one thousand persons, to construct water works and other improvements, and in this act it is specifically provided that the old act of 1886 shall not apply to such municipal corporations. This act also provides for some of the details surrounding the calling of an election. We cannot see what room there is in this statute for construction. The language is plain, and the purpose is plain, and it applies to all municipal

corporations within the several territories having a popula-
tion of not less than one thousand persons. It is a general act,
and must necessarily use general language in its application
to those parts which are directory merely. It supersedes all
territorial acts, if there are any.

By this act, the limitation theretofore placed on munici-
cipal corporations to create indebtedness is abolished, in
so far as it applies to municipalities having a population of
not less than one thousand, when issuing bonds for the pur-
pose of constructing a system of water works; so that it is
immaterial what the existing indebtedness of the town of
Bridgeport may be, and it is immaterial what the form of that
indebtedness may be. It is not to be taken into consideration
when issuing bonds for the purpose of enabling the town to
construct a system of water works.

It is true that congress, by the organic act of this terri-
tory, gave to the legislature the power to legislate on all right-
ful subjects, but while doing so, congress did not relinquish
any of its control over the territory or over the legislative en-
actments, and even though the legislature may rightfully pass
an act limiting the power of municipal corporations to create
indebtedness in the absence of any act of congress, still con-
gress may afterwards abolish such act or supersede it by one
of its own. Therefore, if chapter 5 of the session laws of 1897
could ever have had any application to the question under
consideration, the congressional act of 1898 would supersede
it.

The remaining contention is that the act of congress of
March 4, 1898, provides for a school census to be taken to
determine the population of the town, and that this census

must be taken before an election can be held or bonds issued; that this provision of the law must be strictly complied with; that the population cannot be determined in any other way than by a school census.

We think this provision is directory merely. The important question in this connection to be determined is the *bona fide* population of the town. It is true that the census spoken of is the school census, and if we are to construe this portion of the statute as strictly as counsel for plaintiff contend for, no election could be held or bonds issued by any town or city that did not, in itself, constitute a school district, as there is no provision for any school census to be taken separately for any town or city where the territory embraced in the school district extends beyond the town or city limits. It can hardly be presumed that congress intended by providing this method for taking the census, to make a distinction between those towns which constitute a separate school district, from those which embrace outside territory. There would seem to be no reason for such a distinction, and, if any was intended, the provision for it could readily have been made. Upon this question the trial judge found that the steps taken to authorize the issuance of such bonds by the town of Bridgeport had been taken in substantial compliance with the act of congress of March 4, 1898. The petition admits that a census was taken of school district No. 3, which embraced the town of Bridgeport and other outside territory. It may be that this census was so taken as to enable the defendants to determine the population of the town separate and apart from the entire school district; and, if this was done, it certainly would be a substantial compliance with the

law in that particular. Again the agreed stipulation admits that there had been an assessor's census taken in March, 1902, which gave the town of Bridgeport a population of twelve hundred and eighty-nine. This would certainly be some evidence bearing upon the question of population. The record contains no evidence other than the stipulation of facts agreed to, and nowhere states that this stipulation contains all the facts agreed upon, or that there was not other evidence introduced; so that, under the well settled practice, this record does not present this question for review, as it is a question arising upon the evidence, and the record does not show affirmatively that it contains all the evidence introduced at the trial. (*Wade v. Gould,* 8 Okla. 690; *Board of County Commissioners v. Wright,* 8 Okla. 190.)

No error appearing in the record, the order of the trial judge dissolving the injunction is affirmed.

Gillette, J., who presided in the court below, not sitting; Burford, C. J., absent; all the other Justices concurring.